UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| VENTURA AIR SERVICES, INC., a New York Corporation, and TITAN STRONG, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>TURNBERRY AIRPORT HOLDINGS, LLC, d/b/a Fontainebleau Aviation, a Florida limited liability company,<br><br>    Defendant. | Case No.: 24-cv-23579 |

## COMPLAINT

Ventura Air Services, Inc., and Titan Strong, LLC, by and through its attorneys, Richard Zaden and Seiler Sautter Zaden Rimes & Wahlbrink; and Robert D. Schulte and Schulte Booth, P.C.[1], hereby sues Turnberry Airport Holdings, LLC.  As cause, Plaintiff states as follows:

## PARTIES

1. Plaintiff Ventura Air Services, Inc. ("Ventura") is a New York Corporation engaged in the business of providing air transportation services pursuant to the Federal Aviation Act of 1958 and Part 135 of the Federal Aviation Regulations.

2. Defendant, Turnberry Airport Holdings, LLC, d/b/a Fontainebleau Aviation ("Fontainebleau") is a limited liability company formed and existing under the laws of the State of Florida and which is otherwise a fixed-base-operator, or "FBO", at the Opa-

---

[1] Mr. Schulte and his firm are not licensed in Florida and will promptly request pro hac vice admittance.

1

Locka Airport ('KOPF"), which provides various services to aircraft owners and operators.

3. Plaintiff Titan Strong, LLC ("Titan") is a New York Limited Liability Company and, among other things, an aircraft holding company.

## JURISDICTION AND VENUE

4. Insofar as Plaintiff and Defendant are of diverse citizenship and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331.

5. Venue would be proper in this Court pursuant to 28 U.S.C. § 1391(b).

## NATURE OF CLAIMS/FACTS

6. Ventura is the operator of a US Registered Aircraft, N604LS – a 1997 Bombardier Challenger 604 Aircraft (the "Aircraft.").

7. Titan is the owner of the Aircraft.

8. Pursuant to a third-party lease and at all times relevant, Ventura enjoyed the exclusive use and possession of, but did not own, the Aircraft.

9. While the Aircraft is not "based" at KOPF, Ventura and Fontainebleau are parties to a "Ramp Parking Sub-License Agreement ("RPSLA") dated January 31, 2023, as amended, on August 29, 2023.

10. At its core, the RPSLA is a parking license and permits Ventura to park aircraft that it operates on Fontainebleau's ramp.

11. Among other things, the RPSLA required Ventura "to purchase all of its fuel from Fontainebleau when the Aircraft is at the [Opa-Locka] Airport."

12. The RPSLA did not state any material terms to a fuel purchase agreement in that: 1) it did not require Ventura to purchase any specific amount of fuel from Fontainebleau; 2) it did not require Ventura to purchase fuel at any particular time or interval; 3) it did not identify the price of any fuel purchased; and 4) it specified no other terms and conditions for any fuel purchase transaction.

13. On November 25, 2023, the Aircraft arrived at Opa-Locka Airport ("KOPF") sometime in the afternoon during the course of a revenue flight conducted by Ventura in the course of its normal business operations.

14. After the Aircraft arrived at KOPF, its passengers and crew left the facility and Fontainebleau personnel took possession of the Aircraft by attaching a tug to it and pushing it into a parking area designated by the FBO.

15. At approximately 7:00 p.m., Fontainebleau personnel sent a "reminder" to the absent flight crew of the Aircraft via text to make fuel and other arrangements for the Aircraft's scheduled departure the following day on November 26, 2023 at approximately 1:30 p.m. eastern standard time.

16. The Aircraft's flight crew responded via text stating that "[w]e'll be planning on taking 1300 gal [of fuel] when we arrive."

17. Fontainebleau personnel responded: "[t]hank you for your response. We have noted your request for 1300 gallons of fuel upon your arrival."

18. Fontainebleau personnel did not await arrival of the Aircraft flight crew, who were otherwise on their way back to the FBO, prior to attempting to fuel the Aircraft. Without an agreement or directive to fuel the Aircraft, and actually contrary to the crew's statement, Fontainebleau took it upon itself to begin fueling the Aircraft on

3

November 26, 2023.

19. Fontainebleau personnel who attempted to refuel the Aircraft were unfamiliar with or did not understand the Aircraft's fuel system, yet proceeded to fuel the Aircraft without the requisite knowledge, training or experience and without the benefit of the presence of the flight crew, despite the crew's prior statement.

20. As a result, fuel was pumped solely into the Aircraft's aft fuel tank which caused the Aircraft's center of gravity to move so far aft that it pitched violently upward, causing the tail of the Aircraft to strike the ground.

21. This in turn resulted in significant damage to the Aircraft, not the least of which was the rupturing of its aft fuel tank, causing raw fuel to both migrate into the interior of the Aircraft and into pools of fuel under and immediately adjacent to the Aircraft.

22. The damage to the Aircraft rendered it unairworthy and unavailable for revenue service.

23. The Aircraft then underwent a lengthy period of repair.

24. At all times relevant and as part of its ordinary business practice and fueling operations, Fontainebleau presents, and requests the signing of, a proposed written form fuel invoice identifying such material terms as the identity of the purchaser, fuel price, and fuel amount.

25. This proposed fuel invoice form contains the following language:

> By executing where noted below, the undersigned, who represents that he/she has operational control over the aircraft referenced in this Service Request Form (the "Aircraft"), hereby acknowledges and agrees that under no circumstances shall Turnberry Airport Holdings, LLC or any of its affiliates or their respective officers, directors, members, partners, employees or agents be liable to the undersigned or any other individual

or entity who has an interest in the Aircraft for indirect, incidental, consequences, special or exemplary damages, whether in contract or tort (including strict liability or negligence), such as, but not limited to, loss of revenue, loss of use or anticipated profits, diminution or loss of value, or costs associated with substitution or replacement aircraft.

26. While Fontainebleau presented such a proposed form fuel invoice to Ventura's flight crew, the flight crew did not execute the document.

27. The Aircraft was unavailable for revenue service for at least Six (6) months as a result of the November 26, 2023 incident.

## COUNT I – NEGLIGENCE
## VENTURA AND TITAN v. FONTAINEBLEAU

28. Plaintiff adopts Paragraphs 1-27 herein by reference.

29. At all times relevant, Fontainebleau had a duty to use reasonable care during its fueling operations of the Aircraft, especially given its significant value and the high risk of financial loss.

30. Fontainebleau breached this duty of care by, among other things:

    a. Failing to follow express instructions of the Aircraft's flight crew;

    b. Failing to properly train its employees in the fueling of the Aircraft;

    c. Failing to properly supervise its employees in the fueling of the Aircraft; and

    d. Failing to adopt procedures and protocol necessary to ensure proper fueling of the Aircraft.

31. As a direct and proximate cause of Fontainebleau's negligence, Ventura has suffered harm in the form of Aircraft repair expenses, loss of revenues and profits, and Aircraft value diminution.

**WHEREFORE,** Ventura Air Services, Inc. and Titan Strong, LLC demand judgment against Turnberry Airport Holdings, LLC, d/b/a Fontainebleau Aviation for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) for direct, consequential, and incidental damages, in addition to pre- and post-judgment interests and costs, as well as such further and additional relief as this Honorable Court may deem proper.

## COUNT II – TRESPASS TO CHATTELS
## VENTURA AND TITAN v. FONTAINEBLEAU

32. Plaintiff adopts Paragraphs 1-27 herein by reference.

33. At all times relevant, Ventura enjoyed the right to possess the Aircraft.

34. By ignoring the Ventura flight crew's direction to await their arrival prior to fueling the Aircraft, Fontainebleau intentionally interfered with Ventura's property interest in the Aircraft.

35. Fontainebleau therefore deprived Ventura of the possession and/or use of the Aircraft.

36. Fontainebleau's wrongful interference with the use and possession of the Aircraft directly and proximately caused damages to Ventura.

**WHEREFORE,** Ventura Air Services, Inc. and Titan Strong, LLC demand judgment against Turnberry Airport Holdings, LLC, d/b/a Fontainebleau Aviation for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) for direct, consequential, and incidental damages, in addition to pre- and post-judgment interests and costs, as well as such further and additional relief as this Honorable Court may deem proper.

## COUNT III – GROSS NEGLIGENCE/WILLFUL MISCONDUCT
## VENTURA AND TITAN v. FONTAINEBLEAU

37. Plaintiff adopts Paragraphs 1-27 and 29-31 herein by reference.

38. Sending untrained personnel to fuel transport category aircraft is a known cause of aviation accidents and therefore represents a substantial risk to human life and to property.

39. By Fontainebleau ignoring the acknowledged instructions of the flight crew to not fuel the Aircraft until their arrival and sending untrained personnel to fuel what otherwise is a complicated, multi-million dollar piece of equipment, circumstances were such that damage to the Aircraft was likely, if not certain.

40. In so doing, Fontainebleau engaged in, at best, grossly negligent conduct, if not willful and wanton misconduct, and was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of Ventura and any others exposed to such conduct.

**WHEREFORE,** Ventura Air Services, Inc. and Titan Strong, LLC demand judgment against Turnberry Airport Holdings, LLC, d/b/a Fontainebleau Aviation for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) for direct, consequential, and incidental damages, in addition to pre- and post-judgment interests and costs, as well as such further and additional relief as this Honorable Court may deem proper.

## COUNT IV - BAILMENT

41. Plaintiff adopts Paragraphs 1-27 herein by reference.

42. Ventura delivered the Aircraft to Fontainebleau for the purpose of parking and fueling.

43. Fontainebleau accepted delivery of the Aircraft by attaching a ground support vehicle to it, *i.e.* a "tug", for the purpose of placing it in a parking area of Fontainebleau's choosing.

44. Fontainebleau received consideration for its possession of the Aircraft.

45. The Ventura flight crew did not retake possession of the Aircraft until after Fontainebleau had notified them that the Aircraft had been damaged during Fontainebleau's botched fueling operation, in which the flight crew did not participate.

46. Fontainebleau failed to use reasonable care during the course of its possession of the Aircraft.

47. As a result, the Aircraft and Ventura suffered damages.

**WHEREFORE,** Ventura Air Services, Inc. demands judgment against Turnberry Airport Holdings, LLC, d/b/a Fontainebleau Aviation for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) for direct, consequential, and incidental damages, in addition to pre- and post-judgment interests and costs, as well as such further and additional relief as this Honorable Court may deem proper.

**COUNSEL SIGNATURE BLOCKS TO FOLLOW ON THE NEXT PAGE**

Respectfully submitted,

**SEILER, SAUTTER, ZADEN, RIMES & WAHLBRINK**

By: _____/s/_____
   Richard Zaden, Esquire
   Florida Bar #867357
   2850 N Andrews Ave
   Wilton Manors, FL 33311
   (954) 568-7000
   rzaden@sszrlaw.com

**SCHULTE BOOTH, P.C.**

By: _____/s/_____
   Robert D. Schulte, Esquire (*pro hac* vice *admission to be promptly requested*)
   5263 Bucktown Road, Suite #4
   Cambridge, Maryland 21613
   (410) 822-1200
   rschulte@schultebooth.com

Attorneys for Plaintiffs

9